## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

GANDEE & ASSOCIATES, INC.,       )
                                 )
           Plaintiff,      )
                                 )    **Case No. 3:25-cv-0023**
           v.             )
                                 )
VIRGIN ISLANDS HOUSING FINANCE  )
AUTHORITY, et al.,           )
                                 )
          Defendants.     )
                                 )

APPEARANCES:

GARRETT GANDEE, ESQ.
GANDEE LAW FIRM, LLC
DELAWARE, OHIO
    *FOR PLAINTIFF GANDEE & ASSOCIATES, INC.*

SHARI NATALYA D'ANDRADE, ESQ.
KELLERHALS FERGUSON KROBLIN PLLC
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR DEFENDANTS VIRGIN ISLANDS HOUSING FINANCE AUTHORITY, ET. AL*

### MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

    **BEFORE THE COURT** is Plaintiff Gandee & Associates, Inc.'s ("Plaintiff" or "G&A") Motion for Preliminary Injunction, filed on June 12, 2025. (ECF No. 3.) In its motion, G&A asserts that Defendants Virgin Islands Housing Finance Authority ("VIHFA"), Eugene Jones, Jr. ("Jones") in his official capacity as Executive Director of VIHFA, and Jeanine Blyden[1] ("Blyden") in her official capacity as the former Director of Procurement of VIHFA (collectively, "Defendants") violated G&A's constitutional due process and equal protection rights by unlawfully rescinding contract awards, unlawfully granting contract awards, and improperly rejecting proposals in an arbitrary, irregular and discriminatory manner without

---

[1] It was brought to the Court's attention at the August preliminary injunction hearing that Jeanine Blyden is no longer employed with VIHFA.

justification or rational basis. (ECF No. 3 at 2.) Defendants filed their opposition on June 25, 2025. (ECF No. 16.) On that same day, the Court granted G&A's motion for temporary restraining order ("TRO") prohibiting, *inter alia*, further execution of VIHFA contracts related to the instant matter. (ECF No. 22.) The Court subsequently held a three-day hearing on G&A's request for a preliminary injunction on August 6, 7, and 8, 2025. Plaintiff presented one witness, Garrett Gandee, President of Gandee & Associates, Inc. Defendants presented eight witnesses: Bilinda Fountaine, VIHFA Procurement Officer; Anne-Marie Williams, VIHFA Evaluation Committee Member; Roanna Parris, VIHFA former Contract Administrator; Alanah Lavinier, VIHFA Deputy Chief Disaster Recovery Officer; Debarah Smith, VIHFA Senior Legal Analyst; Jeanine Blyden, VIHFA former Director of Procurement and Contracting; Eugene Jones, Jr., VIHFA Executive Director; and Kate Davis, VIHFA Director of Procurement.

At the conclusion of the hearing, the Court further extended the TRO to August 31, 2025, ordering that it "remain in full force and effect unless otherwise vacated sooner by the Court." (ECF No. 78.) For the reasons set forth herein, the Court will grant, in part, and deny, in part, G&A's motion for preliminary injunction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

When G&A, a disappointed bidder, attempted to communicate discrepancies that it encountered in VIHFA's procurement process, the message rang flat. It was distorted, disputed, ignored, and refuted, as it traveled up the ranks and across procurement, contracting, and legal departments at VIHFA—finally culminating in the instant federal lawsuit that could easily have been averted had VIHFA simply adhered to its own published policies and procedures. Instead, VIHFA appears to have doubled down in a brazen display of disregard for its duty to the public. In the present action, G&A alleges that Defendants unlawfully and arbitrarily rescinded contracts awarded to G&A, improperly awarded contracts to a competing vendor with conflicts of interests and intentionally prevented public scrutiny without providing rational justification for its actions.

### A.  The parties.

*Gandee & Associates, Inc. v. Virgin Islands Housing Finance Authority, et al.*
Case No. 3:25-cv-0023
Memorandum Opinion
Page **3** of **22**

Plaintiff G&A is an Ohio corporation with its principal place of business in Delaware, Ohio. (ECF No. 1 ¶8.) It is a registered corporation in the U.S. Virgin Islands and licensed in the USVI as an environmental engineering and consulting firm. *Id.*

Defendant VIHFA is the lead agency in the U.S. Virgin Islands responsible for administering Community Development Block Grants for Disaster Recovery ("CDBG-DR") from the U.S. Department of Housing and Urban Development (HUD). (*See* Def.'s Ex. D.) Defendant Executive Director Jones is a resident of the U.S. Virgin Islands. *Id.* at ¶10. Former Director of Procurement, Defendant Blyden, is also a resident of the U.S. Virgin Islands. *Id.* at ¶11.

### B. RFQ-003-2024 STT/STX

In March 2024, VIHFA publicly issued Solicitation No. RFQ-003-2024-STT/STX ("RFQ-003"), titled "Environmental Review, Assessments, and Testing Services," to solicit qualifications from vendors seeking to perform CDBG-DR-funded disaster recovery work. (Pl.'s Ex PX-03.) The solicitation served to prequalify vendors for future project-specific contract awards, and G&A timely submitted its response to RFQ-003. (Pl.'s Ex. PX-25; Def.'s Ex. DD.)

VIHFA's published deadline for RFQ-003 bid submissions was at 2:00 p.m. Atlantic Time on April 5, 2024. (Pl.'s Ex PX-03.) The solicitation explicitly stated that "packages received after the official deadline will be considered LATE and will not be considered." *Id.* The official Bid Tabulation published by VIHFA after the deadline had passed confirmed that only two vendors—G&A and ENCON Company, Inc.—had responded with submissions to RFQ-003. (Pl.'s Ex. PX-25, RFQ-003 Submission Time Stamps.) However, VIHFA ultimately awarded project-specific contracts under RFQ-003 to a third company—Tysam Tech ("Tysam"). (*See* Ex. PX-27.) Tysam had not submitted a proposal package before the stated solicitation deadline. In addition, Tysam was not listed on VIHFA's Bid Tabulation. (*See* ECF No. 1-3, VIHFA Bid Tabulation for RFQ-003.)

On June 10, 2024, G&A received a "Non-Award Letter" from VIHFA indicating that G&A was not selected as a qualified vendor because its bid was "not deemed responsible." (*See* Def.'s Ex. GG.) The letter provided no additional information as to why G&A was not

*Gandee & Associates, Inc. v. Virgin Islands Housing Finance Authority, et al.*
Case No. 3:25-cv-0023
Memorandum Opinion
Page **4** of **22**

selected. *Id.* G&A then requested information from VIHFA as to which parts of its application were non-responsive, and Procurement Officer Bilinda Fountaine responded on June 11, 2025, with a list of missing items.[2]

### C.  RFQ-003 Award to Tysam

VIHFA awarded contracts under solicitation RFQ-003 to Tysam—a company that had not submitted a proposal package before the stated solicitation deadline and was also not listed on VIHFA's Bid Tabulation. (Def's Ex. HH.) Although Tysam was not listed on the portal's bid tabulation, the VIHFA contracts drafted for the five RFQ-003 projects awarded to Tysam indicated that Tysam *did* submit a Statement of Qualification for RFQ-003. (*See* ECF No. 1-4.)

### D.  Conflict of Interest

Under Section 5.2 of VIHFA's Conflict of Interest Policy & Procedures Manual (Version 2.0, 18 July 2023), any VIHFA employee who "exercised any functions or responsibilities for CDBG-assisted activities" is designated a "covered person" remaining subject to all conflict-of-interest restrictions for one year after leaving VIHFA.[3] (Def's Ex. C.) VIHFA's general procurement-related conflict of interest requirements state:

---

[2] Items listed as missing were: "1. Asbestos inspection 2. Lead Based inspection/ Risk assessor 3. Performing wetland studies/delineations 4. Approved engineering license 5. Licensed A&E 6. Demonstrating experience in historic and archeological studies, wetland protection, and flood plain management." (Pl.'s Ex. PX-02.)

[3] In addition, VIHFA's Conflict of Interest Policy and Procedural Manual states "[t]he Department of Housing and Urban Development ("HUD") mandates adherence to conflict of interest requirements in each of its programs, and "as the recipient of funds for the HOME, CDBG, and ESG programs, the [VIHFA] adopts the requirements stated in [24 C.F.R § 570.489(h)]." 5.0 USVI Conflict of Interest Policy and Procedures Manual July 18, 2023. Regulation 24 C.F.R § 570.489(h), which covers Community Development Block Grant Program (CDBG) Conflict of Interest, states in relevant part: "(h)(2) Conflicts prohibited. Except for eligible administrative or personnel costs, the general rule is that no persons . . . who exercise or have exercised any functions or responsibilities with respect to CDBG activities assisted under this subpart or who are in a position to participate in a decision-making process or gain inside information with regard to such activities, may obtain a financial interest or benefit from the activity, or have an interest or benefit from the activity, or have an interest in any contract, subcontract or agreement with respect thereto, or the proceeds thereunder, either for themselves or those with whom they have family or business ties, during their tenure or for one year thereafter. (3) Persons covered. The conflict-of-interest provisions for paragraph (h)(2) of this section apply to any person who is an employee, agent, consultant, officer, or elected official or appointed official of the State, or of a unit of general local government, or of any designated public agencies, or subrecipients which are receiving Community Development Block Grant funds." 24 CFR § 570.489(h) – Program administrative requirements.

> [N]o employee, officer, Board member, or agent of the grantee, referred to as "covered person", will participate in selection, or in the award or administration of a contract supported by federal funds if a conflict of interest, real or apparent, would be involved. Such a conflict would arise when any of the following parties has a financial or other interest in the firm selected for an award: . . .[c]overed persons as defined in this policy . . . or [a]n organization which employs or is about to employ [a covered person].

*Id.* Section 4.1. G&A alleges that former VIHFA employee Kyora Veira ("Veira") qualified as a "covered person" until May 17, 2025. (ECF No. 1 ¶21.) Veira served as VIHFA's Senior Environmental Manager from November 2020 until May 17, 2024, during which time she "directly managed and was involved in the exact type of CDBG-funded projects that RFQ-003 solicited." *Id.* at ¶19. Days after leaving VIHFA, Veira announced on her Facebook page that she had accepted a position as an Environmental Engineer with Tysam. *Id.* (*See* ECF No. 1-5, Screenshot of Veira's Facebook page.)

### E. RFQ-004-2024-STT-STX

On June 10, 2024, VIHFA publicly advertised Solicitation No. RFQ-004-2024-STT-STX ("RFQ-004"), titled "Environmental Services," which sought qualification from vendors to support various federally funded disaster recovery projects. (Pl.'s Ex. PX-04.) The submission deadline was advertised as 1:00 p.m. Atlantic Standard Time on July 18, 2024. *Id.* G&A timely submitted its qualifications package by the deadline. (Pl.'s Ex. PX-23.) Thirty-four minutes before the deadline, VIHFA sent an email only to vendors registered on its procurement portal extending the submission deadline by one hour to 2:00 p.m. (Pl.'s Ex. PX-30.) No specific reason was given for the extension. *Id.* According to testimony at the preliminary injunction hearing, no formal written addendum concerning the deadline extension was issued. During this extended window of time, only one additional company responded to RFQ-004—Tysam. (Pl.'s Ex. PX-31.)

According to testimony at the August preliminary injunction hearing, VIHFA was experiencing a technical glitch in their computer system that caused the close of bid time to be incorrectly published, so that Tysam was prevented from submitting its bid on time. Testimony of Bilinda Fountaine. For that reason, the bid deadline was extended by one hour so that Tysam was able to submit its package. Testimony of Fountaine and Kate Davis. (*See*

Def.'s Ex. EEE and FFF.) VIHFA's solicitation rules state that VIHFA reserves the right to change the RFQ schedule, but it may do so only by issuing an addendum.[4] (Pl.'s Ex. PX-04 at 11.) No addendum was published.

On November 15, 2024, VIHFA selected G&A to submit bids for eight projects under RFQ-004, including the "Rodriquez Auto Parts project." (Pl.'s Ex. PX-05.) G&A submitted its bids and was selected for award on seven of the projects. (Def.'s Ex. HHH.) VIHFA sent G&A seven proposed contracts on December 31, 2024, for its review and signature. (Pl.'s Ex. PX-02, PX-07.) However, G&A discovered discrepancies within the draft contracts that contradicted the scope of work outlined in VIHFA's original bid sheets.[5] (Pl.'s Ex. PX-02.) G&A repeatedly attempted to communicate to VIHFA its objections to the contract terms, pointing out that the scope of work contained errors inconsistent with the terms in the bid. *Id.*

On several occasions VIHFA personnel acknowledged receipt of G&A's objections and confirmed G&A's concern. *Id.* G&A made multiple requests to address its concerns with VIHFA's legal department or a project manager, to no avail. *Id.* VIHFA refused to correct the inconsistencies. *Id.* On January 27, 2025, VIHFA gave G&A a hard deadline of close of business on January 31, 2025, to sign any of the seven contracts—none of which had been corrected. *Id.* G&A communicated to VIHFA that it could not sign legal documents containing material errors that contradicted the scope of work that was requested. *Id.* G&A was told by VIHFA

---

[4] VIHFA's solicitation rules state that "VIHFA reserves the right to change the RFQ schedule by issuing an addendum at any time." (Pl.'s Ex. PX-04 at 11.) "The issuance of a written addendum by the Procurement Department is the only official method by which interpretation, clarification or additional information shall be given. If the VIHFA amends this RFQ, the Procurement Department will post such notices on its website, https://www.vihfa.gov/procurement. After the question deadline, the Procurement Department will post responses to the questions in the form of an Addendum. Respondents shall rely only on written statements issued through or by VIHFA's Procurement Department who will post such notices on its website https://www.vihfa.gov/procurement." *Id.* at 12.

[5] The discrepancies specifically included:
1) "Although RFQ-004 stated that VIHFA would determine the 'level of environmental review' required for each project, and although VIHFA's Bid Sheets explicitly specified those levels for each project, every one of the seven draft contracts ... shifted this fundamental duty to G&A. The contracts erroneously stated that the 'Contractor shall be responsible for determining and performing the level of environmental review,' a direct contradiction of both the RFQ and the Bid Sheets." (ECF No. 1 ¶35.)
2) "Additionally, one contract, for the Oasis Cove project, incorrectly required G&A to perform a Phase I Environmental Site Assessment (ESA). . . .[First] VIHFA had never requested a Phase I ESA for Oasis Cove in its RFQ or its Bid Sheets for that project, and [second,] G&A had expressly clarified during the bidding process that its scope of work for Oasis Cove did not include this task." *Id.*

personnel that G&A would be advised of a response from the legal department, but it was never forthcoming. *Id.* On January 31, 2025, VIHFA informed G&A that the VIHFA deadline to sign the seven contracts was "postponed until further advised from Legal." *Id.* On March 10, 2025, Blyden notified G&A that VIHFA was rescinding the awarded contracts in a letter stating:

> After much deliberation, your company will not be moving forward with the [seven projects] as it is in the best interests of the company to move forward with the next selected bidder.

(ECF No. 1-11, VIHFA Rescission Letter.)

**RFQ-004 award to Tysam**

In June 2025, VIHFA posted on its public website a contract award to Tysam for Environmental Review, Assessment & Testing Services (Rodriguez Auto Parts). (PX-01 at 75.) The project was one of the seven contracts that G&A was originally awarded in December 2024. (Pl.'s Ex. PX-07.) G&A had been awarded the contract at a cost of $6,000.00. (Pl.'s Ex. PX-06.) Tysam was later awarded the same project at a cost of $34,232.00. (Pl.'s Ex. PX-100i.) Kyora Veira, former Senior Environmental Manager with VIHFA who began working with Tysam in May 2024, signed the signature page of the "Rodriguez Auto Parts" contract as "Witness" for Tysam. (Def. Ex. OOO.)

**"Sejah Farm Project" Bid**

Only one of the original eight bids that G&A submitted for RFQ-004 was awarded to another vendor—the Sejah Farm project. It was awarded to Tysam. (Pl.'s Ex. PX-09.) VIHFA informed G&A that it had not been selected for the Sejah Farm project because it was "not the lowest responsive bidder." (*See* Pl.'s Ex. PX-08 VIHFA Letter of Non-Award for Sejah Farm Project.) However, Tysam's contract award price for the project was $35,255.00. (*See* Pl.'s Ex. PX-09.) G&A's responsive bid for the identical contract was $11,000. (Def.'s Ex. LLL.)

**F.  G&A Protests**

**(i)  RFQ-004**

On March 14, 2025, at 4:16 p.m., G&A submitted a 17-page formal bid protest, including exhibits, regarding RFQ-004. (Pl.'s Ex. PX-11.) Blyden responded that same day, at

4:33 P.M., seventeen minutes after its receipt. The response did not address any of the allegations or evidence presented by G&A. (*See* Pl.'s Ex. PX-12).

On March 18, 2025, G&A's counsel followed up with VIHFA seeking clarification on whether Blyden's March 14, 2025 letter constituted VIHFA's final decision. (*See* Pl.'s Ex. PX-02.) On March 21, 2025, G&A received a second response—this time from Director Jones—which stated that G&A "requested changes to the scope of work to all contracts" and that "legal responded stating they are unable to amend the scope of work to match the bid sheet however, the contract allows VIHFA to determine the scope of work needed for each project." (Pl.'s Ex. PX-14.) Jones further noted that Gandee tried to contact VIHFA's legal team "in hopes of getting his requests made while evading our process of fair and open competition."[6] *Id.* Testimony provided by VIHFA employees affirmed that VIHFA could not include language in a contract that was inconsistent with the scope of work submitted for bid, and that if it did so, no regulation prevented it from correcting the inconsistency as long as the original scope of work was not changed. Testimony of Blyden and Jones. VIHFA's written responses to G&A's protest did not address the awarding of the "Sejah Farm project" to Tysam at a price "more than 300 percent higher" than G&A's responsive bid. (Pl.'s Ex. PX-01.)

**(ii)    RFQ-003**

On March 25, 2025, G&A submitted a formal bid protest to VIHFA pertaining to RFQ-003 and requested an explanation for the five contracts awarded to Tysam. (Pl's Ex. PX-15.) The next day Jones informed G&A that its protest was untimely because it had not been submitted within five days of the contract's award pursuant to VIHFA's rules. (Pl.'s Ex. PX-18.) Jones did not address the merits of the protest. *Id.*

---

[6] The letter further listed:

"1. Failure to Engage in Good-Faith Negotiations: Gandee requested changes to the scope of work despite submitting a promissory bid to complete each task. Gandee also attempted to negotiate changes directly with Legal Department when his initial request with Procurement was denied.

2. Unfair and Arbitrary Disqualifications: Gandee was awarded as the lowest responsive bidder. However, pursuant to Section 19.0, the solicitation states VIHFA reserves the right not to award a contract pursuant to the RFQ and VIHFA reserves the right to reject any or all companies if deemed to be in its best interest.

3. Potential Violation of Procurement Regulations: VIHFA did not refuse to correct its errors, however, due to timelapse from lack of agreement, the decision to award the projects to another respondent was made. The requests made by Gandee did not align with the terms and conditions of the Authority. (Pl.'s Ex PX-12.)

G&A also emailed VIHFA's legal counsel inquiring "if any appeal process existed," and on April 14, 2025, after receiving no response, G&A submitted appeals of VIHFA's decisions on both the RFQ-003 and RFQ-004 bid protests to the VIHFA Board of Directors and its legal counsel. (Pl.'s Ex. PX-02, PX-33.) Neither VIHFA nor its Board responded to either submission.

### G. Requests for Public Records

Beginning on March 11, 2025, G&A made various public records requests seeking procurement tabulations, bid abstracts, and other internal documents related to RFQ-003 and RFQ-004. (Pl's Ex. PX-02.) On April 11, 2025, VIHFA's legal counsel declined to release certain internal records, citing the Virgin Islands Code and VIHFA's Procurement Policy. *Id.* G&A disputed VIHFA's counsel's interpretation of the laws cited in the response and VIHFA denied G&A access to the public procurement records that G&A believed it was lawfully entitled to review. *Id*. VIHFA later agreed to release the RFQ-003 documents upon payment of copying fees. [7] *Id*.

### H. Instant Action

On June 12, 2025, G&A filed the instant action alleging a violation of procedural due process under 42 U.S.C. § 1983 ("Count One") and a violation of equal protection under 42 U.S.C. § 1983 ("Count Two"). It now moves for a preliminary injunction to: 1) enjoin VIHFA from awarding, executing, or permitting performance of the seven projects under Solicitation RFQ-004 that were originally awarded to G&A on December 16, 2024; 2) enjoin VIHFA from awarding, executing, or administering any contracts under RFQ-003 to Tysam; 3) enjoin VIHFA from taking any further actions regarding the RFQ-004 award of the "Sejah Farm project" to Tysam until it has been lawfully reevaluated; and 4) enjoin VIHFA from implementing, instituting, maintaining, or giving effect to the rescindment of the "Rodriguez Auto Parts" award to G&A until it has been lawfully reevaluated, or awarded to G&A.

---

[7] G&A also alleged that VIHFA did not publicly post, and refused to provide, public bid results for bidding conducted under RFQ-004, "in direct contravention of Section 5 of its own Procurement Policy." (ECF No. 1 ¶56.) G&A filed a lawsuit in the Virgin Islands Superior Court on April 15, 2025, to compel production and the matter is still pending. *Id.* at ¶ 60h.

## II.    LEGAL STANDARD

G&A seeks continued injunctive relief under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Rule 65 of the Federal Rules of Civil Procedure governs the issuance of preliminary injunctions. *See* Fed. R. Civ. P. 65. In order to obtain a preliminary injunction, the plaintiff has the burden of demonstrating that (1) it has a reasonable probability of success on the merits; (2) it will be irreparably injured by denial of relief; (3) granting preliminary injunctive relief will not result in even greater harm to the other party; and (4) a preliminary injunction will be in the public interest. *ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987) (citing *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985)). The first and second factors are "gateway factors" that the movant must establish. *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cty.*, 39 F.4th 95, 103 (3d Cir. 2022). If these two gateway factors are satisfied, a court then determines whether "all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

## III.    DISCUSSION

### A.  Success on the Merits

This first factor is governed by a more stringent standard in the area of government procurement contracts. *Princeton Combustion Research Labs, Inc. v. McCarthy*, 674 F.2d 1016, 1019 (3d Cir. 1982). "Though the bidder has a legitimate interest in fair treatment in accordance with applicable statutes and regulations, the strong public interest in efficient procurement and cost minimization mandates that a procurement contract not be set aside at the behest of a 'disappointed bidder' unless the awarding agency's decision was irrational or clearly illegal." *Id.*; *accord Tip Top Constr. Corp. v. Gov't of the V.I.*, 60 V.I. 724, 732 (2014); *see also Hill Int'l, Inc. v. V.I. Pub. Fin. Auth.*, No. 3:24-cv-00049, 2025 U.S. Dist. LEXIS 87624, at *8-9 (D.V.I. Mar. 12, 2025) (noting that when the court considers likelihood of success on the merits in a bid protest action, it "must analyze whether the decisions made by the [government] were arbitrary, capricious, and not in accordance with procurement law") (citing *KPMG LLP v. United States*, 139 Fed. Cl. 533, 536 (2018)); *but see Plato Constr. Corp. v. Barram*, CIVIL ACTION NO. 96-7424, 1996 U.S. Dist. LEXIS 17780, at *1 (E.D. Pa. Nov. 27,

1996) ("Even when an agency procurement decision appears irrational, courts still have discretion to deny injunctive relief."). [8]

Applying these principles to the instant matter, the Court finds sufficient evidence indicating that VIHFA failed to follow required procedures and that it made decisions in an arbitrary manner.

### 1. RFQ-003

With regards to RFQ-003, G&A contends that different application standards were applied among similarly situated vendors in contravention of VIHFA's own rules, and VIHFA's conflict of interest rules were violated when a former employee of VIHFA who now works for Tysam was permitted to participate in the application process of RFQ-003 on Tysam's behalf shortly after leaving VIHFA. G&A presented evidence supporting its equal protection claim but withdrew its claim in relation to RFQ-003 for purposes of the preliminary injunction. Accordingly, the Court notes the evidence presented but draws no conclusions related to an equal protection claim as to RFQ-003 for purposes of a preliminary injunction. The Court further notes that testimony from the August preliminary injunction hearing indicated that the projects awarded under RFQ-003 were all near completion and all that remains is for VIHFA to pay those contractors. Thus, at this juncture, the Court cannot issue any injunctive relief to G&A as to RFQ-003. Therefore, the Court finds that the issues raised regarding RFQ-003 are moot.

### 2. RFQ-004

G&A argues that after VIHFA awarded—and later rescinded—seven contracts under RFQ-004, it was not provided an opportunity to defend itself or present its case regarding the discrepancies it found within those contracts. Even attempting a protest with VIHFA was a "sham process," and the multi-level review that is supposed to prevent what G&A experienced "was a complete fiction" with a pre-determined outcome, according to G&A.

### a. Due Process Claim

---

[8] "Arbitrary" is defined as "of, relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures." Black's Law Dictionary (12th ed. 2024).

*Gandee & Associates, Inc. v. Virgin Islands Housing Finance Authority, et al.*
Case No. 3:25-cv-0023
Memorandum Opinion
Page **12** of **22**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "It is well established that the Due Process Clause contains both a procedural and substantive component." *Alpha Painting & Constr. Co. v. Del. River Port Auth. of Pa.*, No. 1:16-cv-05141-NLH-AMD, 2018 U.S. Dist. LEXIS 104695, at *9 (D.N.J. June 22, 2018) (citing *American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012)). Procedural due process — violations of which G&A claims here — and substantive due process are different, with procedural protections being much broader than substantive rights. *Id.* To maintain a claim under section 1983 for deprivation of procedural due process rights, G&A must show that: 1) Defendants deprived it of an individual liberty interest that is encompassed within the Fourteenth Amendments' protection, and (2) the procedures Defendants made available to G&A did not provide due process of law. *Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)). To have a property interest,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *accord Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 83 (1st Cir. 2014). Defendants argue that G&A lacks a cognizable property interest with which to assert a due process claim. G&A, on the other hand, argues that it has a legitimate property interest in the seven contracts originally awarded by VIHFA under RFQ-004 and that VIHFA rescinded those contracts "without any constitutionally required procedure." (ECF No. 10 at 4, 5.)

"The Fourteenth Amendment places procedural constraint on the actions of government that work a deprivation of interest enjoying the stature of 'property' within the meaning of the Due Process Clause. Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether

that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (citing *Bd. of Regents*, 408 U.S. at 577).

 Here, the Court must determine what kinds of contracts with the state create rights that are protected by the Fourteenth Amendment, and we are guided by precedent. In *Linan-Faye Construction Co. v. Housing Authority*, the Third Circuit explained that "two general types of contract rights are recognized as property protected under the Fourteenth Amendment: (1) where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits; or (2) where the contract itself includes a provision that the state entity can terminate the contract only for cause."[9] *Linan-Faye*, 49 F.3d 915, 932 (3d Cir. 1995) (citing *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991) (citation altered).

The determination is quite simple here. Each of the seven RFQ-004 contracts awarded to G&A, as drafted by VIHFA, included specific termination provisions that significantly constrained VIHFA's discretion to rescind the contracts. These provisions allow for cancellation only under limited and enumerated circumstances, such as (i) contractor default; (ii) insufficient federal funding allocated for the projects; or (iii) failure by the U.S. Department of Housing and Urban Development ("HUD") to appropriate and release funding for the projects. (*See* Pl's Ex. PX-07 at 11, 12.) Non-compliance with HUD's regulations in title 24 of the Code of Federal Regulations is also a potential cause for termination. *Id.* at 234. Not one of the awarded contracts permitted termination simply for VIHFA's convenience and

---

[9] *But see Redondo-Borges v. United States HUD*, 421 F.3d 1, 10 (1st Cir. 2005) (holding that no property interest existed for a disappointed bidder who was awarded a contract that the state later rescinded). In *Redondo-Borges*, a bid award was "annulled" because the bidder defaulted on a previously awarded contract related to the one annulled. *Id.* at 4. The First Circuit does not recognize a property interest in every state awarded contract nor does it recognize the same "special circumstances that might justify a departure from this settled position" as does the Third Circuit. *Id.* at 10.

VIHFA did not offer a justifiable cause for rescinding any of G&A's awards. Accordingly, the Court finds that G&A maintained a property interest in the continued performance of these agreements.

VIHFA attempts to argue that rescission is permissible pursuant to language within the RFQ-004 solicitation that states: "VIHFA reserves the right to reject any or all companies, or to terminate the RFQ process at any time, if deemed to be in its best interest. VIHFA reserves the right not to award a contract pursuant to the RFQ." (*See* Def.'s Ex. VVV, RFQ-004 Solicitation, 19.0.) The Court is unpersuaded by this red herring fallacy. Clearly, the RFQ solicitation is addressing VIHFA's prerogatives during the procurement process *before* a contract is awarded.[10] *See Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F. Supp. 1118, 1131 (W.D. Pa. 1980) (finding that the plaintiff's property interest "was the right of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the city in fact decided to make an award. The due process to which one possessing the protected interest was entitled was the non-arbitrary exercise by the city of its discretion in making the award. And it follows that a deprivation of the substantive benefit (the protected property interest) without the process due is an actionable wrong"); *see also Enertech Elec. v. Mahoning County Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996)(recognizing a protected property interest in a public contract award if the disappointed bidder can demonstrate (1) that the bidder was awarded the contract and then deprived of it, or (2) that state law granted the governmental entity limited discretion in awarding the contract, which

---

[10] Defendants rely on multiple cases, including G*arcia-Gonzalez v. Puig-Morales*, 761 F.3d 81 (1st Cir. 2014), for the proposition that a disappointed bidder does not have a constitutionally protected property interest in an initial bid award. However, Defendants' conclusion is misplaced. In *Garcia,* no contract had yet been awarded to the disappointed bidder. The disappointed bidder in *Garcia* hung his hopes on an "Adjudication Notification"— a letter informing bidders only that their proposal was 'favorably considered.' One other important difference in *Garcia* is that the court relied on a Puerto Rico Supreme Court ruling that explicitly held that a Puerto Rico government "agency has the right to revoke the award of a contract at any time before the corresponding contract is entered into, since a contract is not binding on an agency until [the] formal contract containing all the legal requirements for the performance of the work is executed in writing." *Id.* at 91. The court in *Garcia* noted that Puerto Rico law made clear that the disappointed bidder in *Garcia* did not have a protected property interest in an "Adjudication Notification" because the parties "did not execute in writing a formal contract containing all the legal requirements for the performance of the work." *Id.* In fact, none of the authorities presented by Defendants were on point because none of the disappointed bidders in those cases had been awarded contracts, unlike G&A in the instant case.

the entity abused) (citation omitted); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("[A] 'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded.")(citation omitted).[11]

G&A was never afforded a hearing much less a rational conversation before or after VIHFA rescinded its contracts. (*See* Pl.'s Ex. PX-02.) The contracts awarded to G&A under RFQ-004 by VIHFA clearly created property interests that entitled G&A to a due process hearing. *See Pan Bldg., Inc. v. Phila. Hous. Auth.*, Civil Action No. 87-3912, 1989 U.S. Dist. LEXIS 991, at *8 (E.D. Pa. Feb. 3, 1989) ("An essential element of due process is that an individual be given opportunity for a hearing before he is deprived of any significant interest.") *(citing Brodie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see also Northern Penna. Legal Services, Inc. v. County of Lackawana*, 513 F. Supp. 678, 682 (W.D. Pa. 1981) (holding that valid contractual rights against a government body create property interests within the scope of the Due Process Clause).

[11] *Pan Building, Inc. v. Philadelphia Housing Authority* sheds additional light on the instant matter. Civil Action No. 87-3912, (E.D. Pa. Feb. 3, 1989). In *Pan,* the defendant housing authority awarded two contracts to the plaintiff corporation, which it later rescinded. After awarding the contracts, the housing authority sent the corporation a letter informing it that the authority had received reports that the corporation defaulted on contracts with another housing authority. The corporation replied that it was actively disputing the default determinations. The housing authority subsequently disqualified the corporation from bidding on future PHA projects for one year due to the corporation's failure to indicate on Form HUD-2530 that the corporation had been terminated for default with another other housing authority. The PHA then rescinded its award to the corporation and rebid the contracts. The corporation was never provided with a hearing. The Court in *Pan* held that the housing authority's notice of the award to the corporation was an acceptance of the corporation's offer, and therefore the housing authority was liable for breach of contract for failure to comply with the contract terms. It also found the corporation was entitled to damage for bid preparation costs and lost profits. More importantly, the Court held that the contract awards created property interests entitling the corporation to a due process hearing. The *Pan* Court stated that "in the context of public bidding it is the award which gives rise to the contract. A public contract has its inception in the award as distinguished from the formal signing of the contract and is binding from that time on." *Id.* at *4-5. The Court found that since all the essential terms of the contracts were embodied in the bids, the housing authority's notice of the award amounted to its acceptance of the corporation's offer. *Id.* at *7 (E.D. Pa. Feb. 3, 1989); *see also Muncy Area Sch. Dist. v. Gardner*, 91 Pa. Commw. 406, 412, 497 A.2d 683, 686 (1985) ("The submission of a bid for public work in response to an invitation constitutes an offer. A good and binding contract is formed when the public body, acting by responsible officers, accepts a written bid. A public contract has its inception in the award as distinguished from the formal signing of the contract and is binding from that time on.").

VIHFA argues that it properly followed its policies and that the contracts awarded to G&A were rescinded because: 1) G&A had requested material changes to the scope of work in the contracts in violation of 2 C.FR. § 200.319(a); and 2) that VIHFA is prohibited from "executing materially altered scopes of work not subject to the original solicitation." (ECF No. 16 at 2, 3.) VIHFA claims that G&A attempted to make a change to the scope of work within the contract. However, testimony provided at the August preliminary hearing—along with the awarded contract and initial solicitation documents themselves— demonstrate that G&A attempted to attain clarification from VIHFA concerning the contracts awarded because the written contracts presented to G&A by VIHFA contained significant inconsistencies with the original scope of work bid upon. (*See* Pl.'s Ex. PX-02.)

VIHFA notified G&A of its award on December 16, 2024, and the contracts were sent to G&A on December 31, 2024. Two days later, G&A alerted VIHFA that language under the scope of work in the contracts was inconsistent with language within the original solicitation for bids. In its January 2, 2025 email, G&A asked VIHFA for clarification:

> [W]e do have a couple of questions at this point that I wanted to bring to your attention:
>
> ALL (7) CONTRACTS: Task 1 (i, iv) in the contracts is stating that the Contractor shall be responsible for reviewing the proposed scope of work at each site and determining the level of review (Environmental Assessment, Categorically Excluded, Environmental Impact Statement, Tiered Environmental Review, etc.) for each project. However, the RFQ (p. 4) states that "VIHFA will determine the required level and/or type of environmental review," and the Bid Sheets that were provided to us for each project stated which type of review had been determined. We did not include time/money for determining the level of review in our bids.
>
> The contracts also make it look like the Contractor is responsible for performing whichever level of review is determined to be necessary. Our bids only allow for the following levels of review requested by VIHFA:
> BUNKER HILL: Environmental Assessment
> OASIS COVE: Environmental Assessment
> KING CHRISTIAN: Environmental Assessment
> OLIVER HANLEY: Environmental Assessment
> WATERFRONT DEV.: Categorically Excluded
> RODRIGUEZ AUTO: Categorically Excluded

TILLET GARDEN: Categorically Excluded

If it is determined that Bunker Hill, Oasis Cove, King Christian, or Oliver Hanley need a level of review in excess of an Environmental Assessment (E.I.S., Tiered), our fees would have to be increased to support this additional work. If it is determined that Waterfront, Rodriguez, or Tillet need a level of review in excess of a Categorically Excluded (Environmental Assessment, E.I.S., Tiered), our fees would have to be increased to support this additional work. OASIS COVE: The contract for Oasis Cove is requesting a Phase I ESA be performed. This was not requested on the Bid Sheet for Oasis Cove. We are fine with performing this task but would need to increase our fee for Oasis Cove by $3,000 (total $9,500).

Please let me know if you have any questions. Thank you!

(Pl.'s Ex. PX-02 at 33.)

Unfortunately, G&A's subsequent repetitive efforts to bring its legitimate concerns to the attention of personnel at VIHFA were ignored. However, the draft language in the contracts is clearly inconsistent with the scope of work presented in the RFQ-004 bid. The first paragraph on page four of the RFQ-004 solicitation states:

For each project, *VIHFA will determine the required level and/or type of environmental review* (e.g. Environmental Impact Statement, Environmental Assessment, Categorically Excluded, Tiered Environmental Review). At any time that the Respondent has evidence that a further level of environmental review is needed, or that additional compliance assessments or studies are required, the Respondent will advise VIHFA in writing as expeditiously as possible. The Respondent will be responsible for coordinating with VIHFA and necessary regulatory agencies to ensure that all documentation is obtained to document compliance with 24 CFR 58.

(Pl's Ex. PX-04) (emphasis added).

The language presented in the contracts that VIHFA sent to G&A was—as G&A repeatedly insisted—inconsistent. Each contract shifts the review responsibility to the contractor:

1. SCOPE OF WORK:
*The Contractor shall perform*, or cause to be performed, the following services:
Task 1 – Environmental Review. . .

v. *Determine the required level and/or type of environmental review* (e.g. Environmental Impact Statement, Environmental Assessment, Categorically Excluded, Tiered Environmental Review) . . . .

(Pl's. Ex. PX-07) (emphasis added).

The solicitation identifies VIHFA as responsible for determining the "required level" of environmental review; the contracts state that it is the contractor who has the responsibility to make this determination. During the course of the preliminary injunction hearing, the Court and the parties immediately recognized the inconsistency. Unfortunately, and somewhat incredulously, VIHFA flatly refused to correct the contracts. The Court finds this extremely baffling.

At the August hearing, witnesses quickly identified—under direct examination by both G&A and questioning by the Court—that the language within the bids concerning the scope of work was inconsistent with the language within the associated contracts and that G&A was correct in its assessment and concerns. It is unclear why VIHFA curtly dismissed G&A's concerns with this glaring inconsistency and did not afford it the attention it deserved. The Court finds that VIHFA's flawed procurement process failed to afford G&A with due process of law. Furthermore, VIHFA's noncompliance with rules concerning deadline extensions, conflict of interest, protest protocol, and an apparent arbitrary reluctance to provide public documentation associated with public bids, causes the Court to find that G&A adequately alleges a property interest impaired or harmed by VIHFA's lack of due process such that likelihood of success on the merits in the instant matter weigh in G&A's favor as to RFQ-004.

### b.  Equal Protection Claim

In Count Two of its Complaint, G&A asserts a constitutional claim under the Equal Protection Clause of the Fourteenth Amendment. G&A argues that VIHFA intentionally treated Tysam—a vendor similar to G&A—differently without a rational basis to do so. (ECF No. 1 ¶¶85,92.) G&A contends that VIHFA persistently favored Tysam by applying "arbitrary double standards" in the administration of its contracting procedures. (ECF No. 10 at 6.) Because the Court will be granting preliminary injunction relief on the basis of G&A's due process claim, the Court finds it unnecessary to address G&A's equal protection claim at this juncture.

### B.  Irreparable Harm

An unsuccessful bidder can show irreparable harm "merely by alleging that it will not be awarded a contract and earn the consequent profits thereunder." *Quality Transp. Servs. v. United States*, 12 Cl. Ct. 276, 282 (citing *Essex Electro Eng'rs, Inc. v. United States,* 3 Cl. Ct. 277, 287 (1983)); *see also Tip Top Constr. Corp.*, 60 V.I. at 731 (affirming that plaintiff satisfied three of the four requirements for a preliminary injunction, including establishment of irreparable injury "through a lost opportunity to compete on a level playing field for the contract"); *Plato Constr. Corp.* at *9 n.4 ("The court will assume that disappointed bidders face irreparable harm because they are limited to recovery of preparation costs in an action at law and may not recoup anticipated profits."); *see*, e.g., *General Electric Co. v. Seamans*, 340 F. Supp. 636, 640 (D.D.C. 1972); *but see Princeton Combustion,* 674 F.2d at 1022 (finding no irreparable injury where the "pleadings reveal no more than injuries cognizable in money damages").

Based on testimony given at the August preliminary injunction hearing, most of the projects within RFQ-003 are either completed or close to completion; however, this is not the case for contracts under RFQ-004. G&A argues it will face irreparable harm because the RFQ-004 projects that VIHFA rescinded "represent unique one-time opportunities tied to specific properties and federal funding." (ECF No. 10 at 9.) G&A contends that injury is imminent as some contract work has not yet been completed and in some cases not even started. (*See* ECF No. 1 ¶42.) G&A further argues that monetary damages cannot fully compensate for the lost business opportunity, ongoing reputational harm and damage to goodwill that it will likely experience absent injunctive relief. *Id.* at 61. The Court finds that G&A demonstrated that it may suffer imminent injury "through a lost opportunity to compete on a level playing field" absent a preliminary injunction concerning contracts under RFQ-004. *Tip Top Constr. Corp.,* at 731. The Court finds this factor weighs in favor of G&A.

## C. Balance of Harms

G&A contends that a preliminary injunction would impose only a short delay and little burden on VIHFA while ensuring a lawful and fair procurement process. G&A also asserts that a delay may also save unexplained excessive expenditure of public funds that were awarded for contracts at a considerably higher cost than what was bid by G&A. (*See* Pl.'s Ex.

PX-100i.) Furthermore, G&A contends that it faces "concrete, irreparable harm while Defendants face only minor inconvenience" with a temporary delay. (ECF No. 10 at 12.) Defendants, on the other hand, argue that "enjoining VIHFA from proceeding with urgently needed housing rehabilitation contracts would delay critical services and impose significant hardship on vulnerable residents." (ECF No. 37 at 5.)

The Court recognizes an inherent interest of any publicly funded project is timely completion—especially after the hurricane destruction of 2017— however, VIHFA offers no specific examples of hardship, and based on the evidence presented, the Court finds the balance of harms weighs in favor of G&A. The Court finds that under the circumstances, eight years since the initial hurricane damage, waiting another six months to ensure a fair procurement process is not the heavier burden.

### D. Public Interest

Defendants contend that VIHFA continues to rebuild homes damaged or destroyed by the 2017 hurricanes, and that "interrupting or delaying these essential services to entertain a contractor's bid dispute would contravene the core public mission of disaster recovery." (ECF No. 37 at 5.) In opposition, G&A argues that public interest favors a preliminary injunction because "ensuring governmental compliance with laws governing public funds and contracts is vital." *Id.* at 13. The Court agrees with G&A. However, even when a disappointed bidder demonstrates that an agency procurement decision is irrational, the court has discretion to refuse declaratory or injunctive relief because of overriding public interests. *Alpha Painting & Constr. Co.,* 853 F.3d at 688 (citation omitted). The Third Circuit has noted three interests that should be weighed when determining whether injunctive relief should be granted:

> (1) the practical considerations of efficient procurement of supplies for continuing government operations,
> (2) the public interest in avoiding excessive costs, and
> (3) the bidder's entitlement to fair treatment through adherence to statutes and regulations.

*Allis-Chalmers Corp., Hydro-Turbine Div. v. Friedkin*, 635 F.2d 248, 253 (3d Cir. 1980).

First, the projects at issue address recovery from damage by two powerful hurricanes incurred nearly eight years ago.[12] No evidence on the record indicates that additional delay will significantly hinder government operations. As for the public interest in avoiding excessive costs, "[g]overnment contracts are awarded under a competitive bidding process to reward the most cost-efficient contractor and thereby save public funds." *Allis-Chalmers* 635 F.2d at 253. Here G&A provides two instances where VHIFA granted awards to Tysam on bids that were significantly higher than G&A's bids.[13] There is reason to believe that public funds may be saved by a reevaluation of the awards. Finally, the bidder's entitlement to fair treatment through agency adherence to statutes and regulations is the primary focus of G&A's complaint. The evidence on record clearly causes this factor to weigh in G&A's favor. In more than one instance VIHFA failed to adhere to its own rules. The general citizenry is "entitled to a guarantee that public contracts are being awarded on the basis of full compliance with the bidding guidelines." *Cubic W. Data, Inc. v. New Jersey Tpk. Auth.*, 468 F. Supp. 59, 69 (D.N.J. 1978); *see also Plato Constr. Corp.* at *6 n.2 ("As a practical matter . . . once a court has found that a procurement decision was irrational or unlawful, it would ordinarily follow that the affected bidder was treated unfairly.") Here, the Court finds public interest weighs in favor of preliminary injunction**.**

---

[12] Hurricanes Irma and Maria impacted the Virgin Islands with back-to-back catastrophic damage within a 2-week time span.

[13] In fact, all eight contracts awarded to Tysam were awarded at significantly higher prices than what G&A bid. (See Pl.'s Ex. PX-100i.) The following were highlighted by G&A:
1) Sejah Farm Project (RFQ-004): On January 13, 2025, G&A received an email from VIHFA containing a letter of non-award for the Sejah Farm contract— the only one of the eight RFQ-004 projects G&A bid upon for which it was not initially selected. (ECF No.  1 ¶45.) The letter stated that G&A was not selected because its bid was "not the lowest responsive bid." *Id.* at ¶44, (*See* ECF No. 1-13.)  A few days later, when G&A inquired as to who the winning bidder was and the price on the winning bid, VIHFA refused to provide the information. *Id.* at ¶45. The contract was awarded to Tysam at a price of $35,255.00. (Def.'s Ex. OOO.) G&A's responsive bid for the identical project was $11,000. (*See* Pl.'s Ex. PX-100i.)  VIHFA provided no basis for the difference in price and offered no testimony countering the evidence provided. According to testimony presented at the preliminary injunction hearing, Tysam has completed the Sejah Farm Project, and G&A did not present argument or evidence to the contrary. Testimony of Kate Davis, VIHFA Director of Procurement.
2) Rodriguez Auto Parts project (RFQ-004): After initially awarding this project to G&A for $6000, the contract was rescinded, and the project was re-awarded to Tysam for $34,232. (*See* Pl.'s Ex. PX-01 at 75.)  The new contract was witnessed by Kyora Veira, the former VIHFA employee who went to work for Tysam less than one month after leaving VIHFA. VIHFA provided no basis for the difference in price and offered no testimony countering the evidence provided.

*Gandee & Associates, Inc. v. Virgin Islands Housing Finance Authority, et al.*
Case No. 3:25-cv-0023
Memorandum Opinion
Page **22** of **22**

## IV.     CONCLUSION

Procurement agencies are often required to decide many close and complex questions and therefore "only when the court concludes that there has been a clear violation of duty by the procurement officials should it intervene in the procurement process." *Plato Constr. Corp.* at *9 n.4 (citation omitted). For reasons discussed above, the Court finds that the record strongly suggests a violation of duty has occurred, and it unfolded like the "Emperor's New Clothes"—the bare truth was laid out but no one at VIHFA spoke up.[14] As such, the Court believes that any reasonable fact finder would agree that VIHFA operated in a blatantly arbitrary manner without a rational basis to do so in its handling of RFQ-004. G&A demonstrates a likelihood of success on the merits of its complaint and absent injunctive relief, G&A is likely to suffer immediate irreparable harm. Furthermore, the balance of harms and public interest weigh in its favor. Accordingly, a preliminary injunction will be granted in part to preserve the status quo.

An appropriate Order follows.

**Dated:** September 1, 2025                                    /s/ *Robert A. Molloy*
                                                                          **ROBERT A. MOLLOY**
                                                                           **Chief Judge**

---

[14] "The Emperor's New Clothes" is a literary folktale by the Danish author Hans Christian Andersen about a vain emperor exposed in front of his subjects when two con men disguised as tailors convince him to wear "invisible" clothes that in reality had him walking about naked.